VILLAGE OF CLAWSON *v.* VAN WAGONER.

1. ESTOPPEL—MUNICIPAL CORPORATIONS—APPORTIONMENT OF DRAIN ASSESSMENT.

Village *held,* estopped from claiming want of notice and irregularities in drain apportionment proceedings where it had actual notice of them and allowed incurring of expense of construction without pursuing remedy of certiorari then open to it, especially since the village was a moving party in furthering the project constructed in part to care for its particular needs and which, as constructed, saves it over twice the amount of assessment (Act No. 331, Pub. Acts 1927).

2. DRAINS—JURISDICTION—BURDEN OF PROOF—SEWERS.

Burden of proving lack of jurisdiction of drain commissioner *held,* not shown where major purpose of project is that of draining open country and while characteristics of a sewer are present in a portion of it, village is not permitted to run raw sewage into it.

3. EVIDENCE—PUBLIC OFFICERS—DRAINS.

Public officers are presumed to act in accordance with the law, so where proceedings designating project as drain are conducted by proper drain officers under the drain law, it will be assumed project is a drain until the contrary is shown.

Appeal from Oakland; Covert (Frank L.), J. Submitted May 5, 1934. (Docket No. 168, Calendar No. 37,614.) Decided July 2, 1934.

Bill by Village of Clawson, a municipal corporation, against Murray D. Van Wagoner, Oakland county drain commissioner, Albert W. Willson, Oakland county treasurer, and Board of County Auditors of Oakland county, to enjoin enforcement of an assessment for drain taxes. Decree for plaintiff. Defendants appeal. Reversed, and bill dismissed.

*Arthur E. Moore,* for plaintiff.

*Arthur P. Bogue,* Prosecuting Attorney, and *Robert D. Heitsch,* Assistant Prosecuting Attorney, for defendants.

FEAD, J.  Plaintiff filed bill and had decree restraining enforcement of an assessment against it for drain taxes.

Petition for the drain was filed in 1925.  At that time a village could not be assessed as a unit for drain benefits.

Plaintiff village commissioners and officers individually signed petitions for laying out the district and locating the drain at bar; by resolutions in January and June, 1927, the village commission formally urged construction of the drain; on July 8th the village released right of way in a street for it.  By Act No. 331, Pub. Acts 1927 (see 1 Comp. Laws 1929, § 4862 *et seq.*), effective September 5th, a village could be assessed at large for drain benefits. On September 15th the drain commissioner entered notice of letting contracts and of review of apportionment of benefits; notices of the review were published but made no reference to the village; and no notice was served on the village president as required by the act.  On September 15th, also, the drain commissioner entered in his office the statutory order as to the number of instalments and the issue of bonds.  It shows the apportionment of benefits to plaintiff at 10 per cent. of the cost.  The bond form was approved by the treasurer and probate judge.

The village manager of plaintiff and a commissioner attended the hearing on apportionment, learned that the village had been charged with 10 per cent. of the cost, reported the fact to the village

commission, and the manager solicited the drain commissioner to reduce the apportionment. He knew how to make application for review but did not do so as the village wanted the drain constructed because it would save it a large sum of money in the disposal of sewage.

Afterwards a determination of costs was made and the contract for construction let. A village engineer did preliminary work and the drain commissioner paid the village for it. The engineer who designed the drain worked under the orders of the official village engineer. No objection to the project was made by the village and it paid to the township, February, 1929, $5,019 to reimburse it for amounts it had paid on the assessment. Plaintiff claims the apportionment and assessment against it are void for want of notice and irregularities in not naming it in all the proceedings and because the proceeding had been commenced before it could be assessed for benefits.

Plaintiff, having had actual notice of all the apportionment proceedings against it, should promptly have pursued the remedy of certiorari for the matters now claimed (*Strack* v. *Miller*, 134 Mich. 311; *Township of Clarence* v. *Dickinson*, 151 Mich. 270; *Auditor General* v. *Union Lake Land Co.*, 239 Mich. 437), and, having stood by and seen the drain constructed and the expense incurred without pursuing such remedy, it is estopped from complaining of them (*Moore* v. *McIntyre*, 110 Mich. 237; *Hall* v. *Slaybaugh*, 69 Mich. 484; *Township of Walker* v. *Thomas*, 123 Mich. 290; *Wilson* v. *Woolman*, 133 Mich. 350). It may be said that the facts present a particularly strong case of estoppel because the village was a moving and insistent party in furthering the project, part of the drain was constructed to care for its particular needs, the drain saves the village over twice the amount of the assessment against

it and its complaint of statutory irregularities is purely technical in the light of its actual knowledge.

Assuming it is open, the serious question is whether the whole proceeding was void for lack of jurisdiction on the ground that the project is a sewer and not a drain. It runs along the easterly boundary of the village about 2,000 feet and then 7,000 feet to a natural watercourse, which had been improved and is called the Red Run Drain. It is constructed of reinforced concrete, has a diameter of 7.6 feet at the outlet, 3 feet at the upper end, is covered, and its greatest depth is 17.5 feet. It has manholes, catch basins, junctions, chambers and basins. It can take care of surface water. It is so constructed that it can carry raw sewage. Stubs for house connections in the village were installed about 20 feet apart. Connections have been made in the village but the sewage must first pass through septic tanks. The village surface water had been satisfactorily cared for by open ditches. The principal concern of the village in the drain was in disposal of its sewage. Obviously the thing has many of the characteristics of a sewer, as indicated in *Clinton* v. *Spencer,* 250 Mich. 135; *Township of Lake* v. *Millar,* 257 Mich. 135; *Kinner* v. *Spencer,* 257 Mich. 142, and of a drain, *Hankinson* v. *Deake,* 265 Mich. 1.

If the drain had been built merely to serve the purpose of the village, probably the facts would preponderate in designating it as a sewer. But, as measured by the cost, 90 per cent. of it, or, as measured by length, nearly fourth-fifths of it serves other territory, including two townships. Except that there are some eighty houses in the district outside of plaintiff village, we are not told of the conditions in such territory. The evidence was confined almost wholly to the village. The fact that the village is not permitted to run raw sewage into the drain, that

it leads to a natural watercourse, and that most of it serves open country, would raise strong inferences that the major purpose of the project is drainage. The fact that a small part of it has joint drainage and sewage functions would not establish the character of the whole project as a sewer.

It is a presumption that public officers act in accordance with the law. The proceedings designated the project as a drain and were conducted by the proper drain officers under the drain law. It must be assumed, then, until the contrary is shown, that the project is a drain. Want of jurisdiction must be affirmatively proved. We do not think plaintiff has sustained the burden of proof.

Decree reversed and bill dismissed.

NELSON SHARPE, C. J., and POTTER, NORTH, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with FEAD, J.

WIEST, J. (*concurring.*) I concur in reversal on the ground of estoppel.